**IT IS SO ORDERED.**

**SIGNED THIS: August 8, 2024**

_____
**Peter W. Henderson**
**United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

In re:

PAUL R. LITTEN, II, and
VALERIE A. LITTEN,

Case No.  23-80800

**Debtors.**

### ORDER

The individual debtors in this case under subchapter V of Chapter 11 excluded or exempted about $200,000 in retirement funds from property of the estate. Though most creditors may not reach those exempt funds, two creditors here—the Internal Revenue Service (IRS) and the Illinois Department of Revenue (IDOR)—maintain the ability under nonbankruptcy law to levy the funds to satisfy tax debts. The IRS has filed a motion for relief from the automatic stay in order to do so. The motion will be granted.

1

I.    Background

The Debtors filed a voluntary petition on October 26, 2023. Within two weeks, they filed Schedule C ("The Property You Claim as Exempt") and listed four retirement accounts as exempt under 735 ILCS 5/12-1006: two IRAs with Ameriprise and two 401(k)s through their employers. In total, the accounts were valued at $202,000. A meeting of creditors under 11 U.S.C. §341(a) was held on November 21, 2023. No objections to the Debtors' claimed exemptions were filed thereafter.

Early in the case, the Debtors filed a motion for the interim use of cash collateral. The Debtors averred that they had two bank accounts containing about $15,000 that were potentially subject to liens held by the IRS and IDOR. They sought to use that cash collateral for ordinary and necessary living expenses consistent with a budget they submitted. After notice and a hearing, and without objection, the Court in early December 2023 granted the motion, authorized the use of cash collateral, and granted the IRS and IDOR replacement liens in post-petition deposit accounts to the extent of their pre-petition interests. No mention of the retirement accounts was made in the motion, at the hearing on the motion, or in the order. The proposed budget—comprising Schedules I and J—did not suggest that the Debtors intended to use retirement funds for ordinary and necessary living expenses.

A Subchapter V Plan of Reorganization was filed in January 2024. The plan explains that the Debtors operated a business from 2011 to 2019 and incurred both significant personal guarantee liabilities and assessments for trust fund taxes by the IRS and IDOR. The Debtors, who are in their late 50s, proposed to commit their projected disposable income to the plan for a period of 36 months. Those payments would be disbursed to their mortgagee ($2,600 per month), to the IRS ($3,899 per month), to IDOR ($616 per month), and to their car lender and all other unsecured creditors ($300 per month). The plan proposed treating all of the tax claims, whether filed as secured or priority claims, as secured claims. The U.S. Trustee objected to the plan, arguing that the Debtors can commit more money to the plan and should pay for five years.

According to the IRS's Claim 8-5, the Debtors owe nearly $390,000. The IRS had filed notices of federal tax liens for about a third of the total claim (around $137,000), which attached to all property and rights to property, whether real or personal, belonging to the Debtors. See 26 U.S.C. §6321. That secured portion of the claim would be entitled to priority under 11 U.S.C. §507(a)(8) but for its secured status. Most of the remaining amount—around $240,000—is classified as priority unsecured debt under §507(a)(8). The Debtors asserted at the July 30, 2024 hearing on the IRS's motion that they continue to contest the total debt owed and believe that they may owe about

2

$50,000 less than the currently claimed amount. IDOR, for its part, claims priority tax debts of nearly $100,000 (Claims 14-1 & 15-1). Like the IRS, IDOR has the power under nonbankruptcy law to levy upon property without exemption. 35 ILCS 120/5f.

A subchapter V plan must meet all or most of the requirements of 11 U.S.C. §1129(a) in order to be confirmed. 11 U.S.C. §1191(a), (b). Specifically, the plan must treat priority tax debts as specified in 11 U.S.C. §507(a)(8) in a particular fashion:

> [T]he holder of such claim will receive on account of such claim regular installment payments in cash—
>
> (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
>
> (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
>
> (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan ….

11 U.S.C. §1129(a)(9)(C). A secured tax claim receives the same treatment so long as it would be a priority claim but for the secured status of the claim. 11 U.S.C. §1129(a)(9)(D). In short: the Debtors appear to owe roughly $470,000 (perhaps more like $420,000, if the Debtors are right about the IRS number being inflated) in secured and priority tax claims that must be paid within five years. The current plan, which proposes paying the taxing bodies about $4,500 per month over 36 months (for a total of about $162,000), does not come close to meeting the requirements of §1129(a)(9), which again requires full payment within five years. (The plan in fact proposes paying the full tax debts over 30 years.) The IRS and IDOR both objected to confirmation under §1129(a)(9)(C) and (D), and at a preliminary confirmation hearing in March 2024 the Debtors agreed that more work was needed to propose a confirmable plan. The Court continued the hearing on confirmation for two months with the expectation that the parties would continue to negotiate the terms of an amended plan.

In the week before the continued hearing on confirmation, the IRS filed an *ex parte* motion to freeze the retirement accounts and for relief from the automatic stay so that it could levy the excluded and exempted retirement accounts. The Court entered an order freezing the retirement accounts in order to preserve the status quo pending a final decision on the motion for relief from the stay. The Debtors were given an opportunity to contest the freeze order but declined to do so. The parties then

thoroughly briefed the motion for stay relief, for which the Court is grateful, and participated in a hearing on July 30. The matter is ripe for decision.

## II. The IRS is entitled to relief from the stay.

The filing of a bankruptcy petition has certain immediate consequences, including the creation of an estate comprising (with exceptions) "all legal or equitable interests of the debtor in property as of the commencement of the case." *City of Chicago v. Fulton*, 592 U.S. 154, 156 (2021); 11 U.S.C. §541(a). One exception: the estate does not include ERISA-qualified retirement plans that contain anti-alienation provisions. *Patterson v. Shumate*, 504 U.S. 753, 760 (1992); 11 U.S.C. §541(c)(2). The IRS asserts without contradiction that the Debtors' 401(k) funds fit in that category and thus were never part of the bankruptcy estate.

Debtors can withdraw property from the estate by exempting it. *Owen v. Owen*, 500 U.S. 305, 308 (1991); 11 U.S.C. §522. The Debtors here have successfully exempted all of the retirement accounts at issue, if the 401(k)s were not already excluded from the estate. The Debtors claimed the accounts were exempt and no timely objection was filed, so the accounts are exempt and no longer property of the estate. 11 U.S.C. §522(*l*); Fed. R. Bankr. P. 4003(b)(1); see *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992).

Filing a petition also creates a "stay, applicable to all entities of efforts to collect from the debtor outside the bankruptcy forum." *Fulton*, 592 U.S. at 156; 11 U.S.C. §362(a). The parties agree that the stay applies here and prevents the IRS from levying the retirement accounts without seeking a modification of the stay. In general, the automatic stay protects the estate from dismemberment and prevents individual creditors from pursuing their own interests to the detriment of the others. *Fulton*, 592 U.S. at 157. The stay gives debtors the breathing room they need to attempt a reorganization plan. *Kimbrell v. Brown*, 651 F.3d 752, 755 (7th Cir. 2011). Couple that with a debtor's exclusive right in subchapter V to file a plan within 90 days of the petition, 11 U.S.C. §1189, and it is clear that a subchapter V debtor should be given time at the outset of the case, free from the demands of individual creditors, to propose a workable reorganization plan in one forum.

The stay is automatic, but it is not everlasting. Section 362(d) requires the bankruptcy court, on request of a party in interest, to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1). It also requires the court, with respect to a stay of an act against property, to grant relief from the stay if (A) the debtor does not have equity in the property, and (B) such property is not necessary to an effective reorganization. *Id*.

4

§362(d)(2). The IRS argues that relief should be granted to permit it to levy the Debtors' retirement accounts under both §362(d)(1) and (2).

### A.    Cause exists to lift the stay.

The Court agrees that there is cause to lift the stay. The IRS is a creditor with an interest in property that is entitled to adequate protection. 11 U.S.C. §362(d)(1); see *In re Rios*, 649 B.R. 30, 37 (Bankr. E.D. Wis. 2023). Because the retirement accounts in which the IRS has an interest have been excluded or exempted from the estate, the Court has little authority to dictate what happens with those accounts. *Matter of McClellan*, 99 F.3d 1420, 1423 (7th Cir. 1996). They cannot be liquidated under Chapter 7, though the Debtors could propose to voluntarily commit some or all of the funds to a Chapter 11 plan. So whether the IRS should be able to levy the accounts outside of the bankruptcy forum comes down to whether the Debtors have adequately proposed a workable Chapter 11 plan that protects the IRS's interests. As noted above, debtors are entitled to some time to try to negotiate a plan that satisfies their creditors and accords with the Bankruptcy Code. The Court is generally not willing the lift the stay early on in a subchapter V case when that act would prioritize one creditor's interests over the prospect of a confirmable plan of reorganization.

Unfortunately, the Debtors have failed to propose a confirmable plan. The current plan is far from confirmable because it does not treat the tax claims as prescribed by 11 U.S.C. §1129(a)(9)(C) and (D). And there seems to be no prospect of a confirmable plan in sight. Were a plan to treat those claims according to the statute, the Debtors would need to pay at least $420,000 over five years (with interest, 11 U.S.C. §511), which back-of-the-napkin calculations suggest would require an $8,500 monthly payment. They swore on Schedules I and J that their monthly net income is $3,715. A plan that strictly complies with §1129(a)(9)(C) and (D) would thus be unconfirmable under either §1129(a)(11) (requiring a plan to be feasible) or §1191(c)(3) (requiring at least a reasonable likelihood that debtor will be able to make all plan payments).

In their response to the IRS's stay-relief motion, the Debtors did not address the fact that the current plan is unconfirmable. The Court thus asked them at the July 30 hearing about a potential path to confirmation. Even with ample notice that §1129(a)(9)(C) and (D) stand in their way, see Doc. #70 at 2–3 (IDOR objection of Feb. 26, 2024); Doc. #79 at 3, 6–7 (IRS objection of Mar. 1, 2024); Doc. #90-1 at 12 (IRS motion of May 22, 2024), the Debtors were unable to provide a satisfactory answer. Apart from noting that they were still negotiating down the total amount of the IRS's claim, the Debtors suggested that the secured tax claims could be modified notwithstanding §1129(a)(9)(D). No authority was provided for that idea, and the Court could not find

5

any in its research. As the IRS suggests, the only apparent path towards a successful plan of reorganization requires liquidation of the retirement accounts, either to satisfy the IRS's liens outside of bankruptcy or to apply to plan payments.

The Debtors do not want to liquidate the accounts, though. Indeed, they appear to want to keep the IRS away from the accounts for as long as possible and to retain and spend the retirement funds for their own use notwithstanding the tax liens. See, e.g., Doc. #102 at 5 (noting that the "Debtors are not young people" and "the retirement funds are necessary to replace their future incomes when they are no longer able to work."); Doc. #59 at 2 (indicating Debtors' intent to make retirement plan withdrawals if they are unable to "meet their personal expenses and plan obligations" in any particular month). That approach to the collateral securing the IRS's interest does not satisfy the Bankruptcy Code's requirement of adequate protection. *Rios*, 649 B.R. at 37; *In re Bailey*, 574 B.R. 15, 18 (Bankr. D. Me. 2017).

The parties are thus at an impasse. They know best which rights they wish to stand upon and which are open to negotiation. The Court's role is to permit the parties enough time to negotiate and then to enforce the rights they press. The IRS has the right to adequate protection of its interest in the Debtors' retirement accounts, and it has the right to a plan that complies with §1129(a)(9)(C) and (D). The Debtors have had the breathing room envisioned by subchapter V—over 9 months since filing the case—to try to negotiate a solution. While a taxing body can agree to a different treatment from §1129(a)(9), *In re Greenwood Point, LP*, 445 B.R. 885, 905 (Bankr. S.D. Ind. 2011), and need not seek stay relief under §362(d) even if there is no adequate protection, the IRS has chosen to stand upon its rights. The Court thus has no choice but to grant the relief the IRS is entitled to. Because there is cause to modify the stay under §362(d)(1), the Court does not address whether the requirements of §362(d)(2) are also met.

      B.     **The Debtors' counterarguments do not change the result.**

The Debtors argue that the IRS is adequately protected because the Debtors are already bound by the cash collateral order to refrain from dissipating the retirement funds. Not so. First, the retirement accounts have either been excluded from or exempted from the estate. "Cash collateral" means cash or cash equivalents in which the *estate* and another entity both have an interest. 11 U.S.C. §363(a). The bankruptcy court can only authorize the use of property *of the estate*, including cash collateral. 11 U.S.C. §363(c)(1), (2); *In re Village Green I, GP*, 435 B.R. 525, 530 (Bankr. W.D. Tenn. 2010). To the extent the Court's cash collateral order can be construed as reaching the retirement accounts, it is void because the Court does not have authority under section 363 to control the use or disposition of non-estate property.

6

More to the point, the cash collateral order does not reach the retirement accounts because those accounts were not the subject of the cash collateral motion. The Debtors presented the Court with a request to use and maintain bank accounts that contained $15,000. They promised to stick to their budget as described in Schedules I and J. They did not seek to use retirement funds to cover their ordinary and necessary expenses. The cash collateral order does not adequately protect the IRS's interest in the Debtors' retirement funds, because it does not cover those funds.

The Debtors also criticize the IRS's use of the *ex parte* procedure that led to the Court freezing the retirement accounts pending disposition of the stay-relief motion. They might have a point, but it is now moot. While it was a close call, the Court granted *ex parte* relief to preserve the status quo ante and thus "enable[] the [C]ourt to stay relatively neutral in the underlying legal dispute" about the retirement accounts. *Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 945 (7th Cir. 2006), quoting with approval *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1015 (10th Cir. 2004) (McConnell, J., concurring). The Debtors are right that *ex parte* orders should be entered rarely, but they are permitted under 11 U.S.C. §362(f) and Bankruptcy Rule 4001(a)(2). Having forgone the opportunity to challenge the freeze order as inconsistent with the statute and rule, the Debtors may not now assert that the supposedly inappropriate *ex parte* nature of the IRS's motion bears on whether relief should be granted. Relief on the merits is governed exclusively by §362(d).

In a similar vein, the Debtors, joined in part by IDOR, criticize the IRS's motion as a collateral attack on the plan that would be better addressed as part of confirmation proceedings. While that would be the Court's preference as well, the Court is required to enforce the rights of parties when they are properly invoked. Cf. *United States v. Rollins*, 607 F.3d 500, 501 (7th Cir. 2010). The Court cannot ignore a party's invocation of a statutory right simply because it would prefer that the party delay enforcing its right in service of a broader goal in the case. The IRS filed its motion seven months after the case was filed and four months after an unconfirmable plan was filed. The Court cannot fault the IRS for proceeding as it did, even as it agrees with the Debtors and IDOR that continuing to negotiate the terms of a plan might be a more efficient way to try to work out a feasible reorganization plan with multiple parties. (The Court notes that negotiation remains a possibility; that the stay will be lifted does not mean the IRS must proceed on its plan to levy the accounts, if the parties can come up with a solution.)

At the end of the day, now after thorough briefing and two hearings on confirmation, the Debtors have failed to offer a proposal that would adequately protect the IRS's interest in the retirement accounts or result in a confirmable plan. While the

7

Debtors will be given more time to come up with a confirmable plan, the IRS is entitled to seek nonbankruptcy remedies with respect to its interest in the retirement accounts now.

### C. This order only modifies the stay.

The Debtors finally ask the Court to consider the tax consequences of permitting the IRS to levy the accounts. Though the fact of tax consequences is regrettable, the Court does not view that consideration as relevant to the IRS's right under §362(d) to modification of the stay. The IRS, acknowledging the tax consequences, requests that any order modifying the stay direct the 401(k) plan administrators to withhold 28% for the 2024 tax year to account for new tax liability. That request will be denied. A hearing on a motion to lift the automatic stay is limited in scope. *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990); *In re Scharp*, 463 B.R. 123, 128 (Bankr. C.D. Ill. 2011) (Perkins, J.). The IRS is entitled to relief from the stay; the consequences of lifting the stay are for the parties to determine. See *Rios*, 649 B.R. at 38. The Court of course encourages the parties to continue to work together to find an agreeable resolution to the tax-consequences issue.

Similarly, IDOR opposed the motion because it asserts that its liens have priority over all IRS assessments. Again, this order does not purport to resolve or direct what will happen once the stay is no longer in effect. IDOR retains its right to assert its priority status under applicable nonbankruptcy law. See *id*.

The motion is therefore GRANTED. Because the Court's order freezing the retirement accounts stemmed from its authority under §362 to oversee proceedings involving the automatic stay, 11 U.S.C. §362(f); Fed. R. Bankr. P. 4001(a)(2), the freeze order will terminate upon the effective date of this order. An order granting relief from the automatic stay is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise. Fed. R. Bankr. P. 4001(a)(3). The Court sees no reason to deviate from that default rule. Cf. *Matter of Steenes*, 918 F.3d 554, 557 (7th Cir. 2019). The freeze order will continue in effect until the 14-day stay expires.

IT IS THEREFORE ORDERED:

1. The automatic stay in this case is modified so as not to restrain either the Internal Revenue Service or the Illinois Department of Revenue from pursuing nonbankruptcy remedies with respect to the four retirement accounts listed in the Debtors' Schedule C, filed November 21, 2023, namely two Ameriprise IRAs and two employer 401(k)s.

      2.      The freeze order entered May 21, 2024, is terminated.

      3.      Both components of this order are stayed until the expiration of 14 days after the entry of this order. Fed. R. Bankr. P. 4001(a)(3).

# # #